UNIVERSAL TRANSCONTINENTAL CORP. *v.* UNITED STATES (No. 4707)[1]

United States Court of Customs and Patent Appeals, November 4, 1952

*Jordan & Klingaman* (*J. L. Klingaman* of counsel) for appellant.

*Charles J. Wagner*, Acting Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel), for the United States.

[Oral argument October 7, 1952, by Mr. Klingaman and Mr. Weeks]

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, COLE, and JACKSON (retired), Associate Judges

O'CONNELL, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court, Second Division, entered in conformity with its decision, Abstract 55816. The judgment overruled two protests filed by appellant and consolidated for trial as involving the single issue whether certain sums of money sought to be recovered by appellant, the importer, were illegally exacted as customs duties on the respective shipments of "Garnetted or Carded Rayon" or "Garnetted rayon" at the rate of 10 cents a pound and 25 per centum ad valorem under paragraph 1302 of the Tariff Act of 1930.

The protests claimed the imported merchandise was properly dutiable under the same paragraph of the act at the rate of 25 per centum ad valorem as "filaments of rayon or synthetic textile, not exceeding thirty inches in length, other than waste, whether known as cut fiber, staple fiber, or by any other name."

Paragraph 1302 provides for distinctive rates of duty at which the five respective classes of imported merchandise enumerated therein shall be assessed for duty, namely:

Par. 1302. Waste of rayon or other synthetic textile, except waste wholly or in chief value of cellulose acetate, 10 per centum ad valorem; *filaments of rayon or other synthetic textile, not exceeding thirty inches in length, other than waste, whether known as cut fiber, staple fiber, or by any other name, 25 per centum ad valorem;* noils of rayon or other synthetic textile, 25 per centum ad valorem; *garnetted or carded rayon or other synthetic textile, 10 cents per pound and 25 per centum ad valorem;* sliver, tops, and roving, of rayon or other synthetic textile, 10 cents per pound and 30 per centum ad valorem. [Italics supplied.]

The italics hereinbefore supplied were set forth here to indicate and divorce the contested dutiable status of the merchandise in issue from the other classes of the merchandise itemized in the paragraph. There is no dispute between opposing counsel as to any material fact and at the trial, as correctly stated in appellant's brief:

It was agreed in open court that the merchandise assessed for duty at 10 cents per pound and 25 per cent ad valorem is the result of subjecting rayon waste to a garnetting process; that the individual filaments do not exceed thirty inches in length; and that the merchandise is used in the production of spun yarns wholly or in part of rayon. * * *

Garnetted rayon [1] and garnetted waste,[2] as the court below properly pointed out, have been respectively defined by the Summary of Tariff Information as follows:

Garnetted rayon consists of fibers reclaimed from hard-twisted converters' thread waste, fabric ends, tailors' clippings, and rags from discarded hosiery and knitted garments, by a severe shredding treatment on picking and garnetting machines. The latter are similar to carding machines but much sturdier in construction. * * *

 *  *  *  *  *  *  *

Garnetted waste is waste which has been passed through a garnett machine consisting essentially of a large cylinder covered with iron teeth. The process of garnetting reduces hard thread waste to a soft, fluffy stock suitable for reworking. Garnetted waste is carded and spun on the woolen system and is used for the same purposes as wool shoddy; it enters into blankets, mackinaw cloth, overcoatings, and cheap suitings.

Appellant urged before the trial court and continues to maintain here that the admitted facts bring the merchandise in question within the contested provisions of paragraph 1302 for either classification thereof in the absence of the other; and that the sole issue involved is governed by determination of the question as to which one of the two classifications prevails over the other.

Appellant quotes from the Report of Finance Committee of the Senate entitled "Manufacturers of Rayon or Other Synthetic Textile,"[3] with reference to the enactment of paragraphs 1301[4] and 1302, and argues on the basis thereof that Congress intended to exclude filaments of garnetted or carded rayon from the provision of paragraph 1302 under which the collector acted in the case at bar.

[1] Summary of Tariff Information, 1948, Volume 13, page 33.

[2] Summary of Tariff Information, 1929, on the Tariff Act of 1922, page 1795.

[3] Congressional Record, Vol. 71, Part 3, 71st Cong., 1st Sess., June 4 to September 9, 1929, page 3389.

[4] Par. 1301. Filaments of rayon or other synthetic textile, single or grouped, and yarns of rayon or other synthetic textile, singles, all the foregoing not specially provided for, weighing one hundred and fifty deniers or more per length of four hundred and fifty meters, 45 per centum ad valorem; weighing less than one hundred and fifty deniers per length of four hundred and fifty meters, 50 per centum ad valorem; and, in addition, yarns of rayon or other synthetic textile, plied, shall be subject to an additional duty of 5 per centum ad valorem; *Provided*, That none of the foregoing filaments shall be subject to a less duty than 40 cents per pound, and none of the foregoing yarns shall be subject to a less duty than 45 cents per pound. Any of the foregoing yarns if having more than twenty turns twist per inch shall be subject to an additional duty of 45 cents per pound.

Appellant in support of its position points out that the involved commodity consists of a mass of filaments obtained before importation as a result of treating rayon waste to the manufacturing process of garnetting, and asserts on the facts presented that the converted product is subject to the operation of the provision of paragraph 1302 for the lower rate of duty under the accepted maxim of customs law applied to statutory construction; namely,—*expressio unius est exclusio alterius*, which, freely translated, means, the mention of one thing implies the exclusion of another thing.

A further "strong reason" in support of the same conclusion, appellant contends, is the all-inclusive phrase "or by any other name" employed in the enactment of paragraph 1302, citing *Mason v. Robertson*, 139 U. S. 624, 627; *Smith v. United States*, 5 Ct. Cust. Appls. 40, T. D. 34008; *United States v. Field & Co.*, 7 Ct. Cust. Appls. 430, T. D. 36985.

The report of the Finance Committee of the Senate relied upon by appellant and hereinbefore cited was also relied upon by the court below which, so far as pertinent, held that:

While it is true that the particular portion of said paragraph 1302 under which claim is made in this case contains the words "* * * whether known as cut fiber, staple fiber, or by any other name, * * *," those words apply only to "* * * filaments of rayon or other synthetic textile, not exceeding thirty inches in length, other than waste * * *." The merchandise here involved consists of "garnetted rayon," which is an entirely different commodity from "filaments of rayon," for tariff purposes.

The trial court also analyzed the language of the competing provisions of the statute and reached the following conclusion:

Having provided in the first part of said paragraph for "waste of rayon," and realizing that "filaments of rayon" might be "waste of rayon" also, when the Congress came to write the provision for "filaments of rayon," it was very careful to exclude therefrom such filaments of rayon as were waste, by use of the words "other than waste." We fail to see anything in the provision for "filaments of rayon or other synthetic textile, not exceeding thirty inches in length, other than waste, whether known as cut fiber, staple fiber, or by any other name," which suggests that the Congress considered that provision sufficiently specific to override other provisions in the same paragraph. By use of the language employed, the Congress simply made clear its intention to classify all waste rayon, including "filaments of rayon," if such were in fact waste, under the first part of the paragraph, as "Waste of rayon or other synthetic textile, except waste wholly or in chief value of cellulose acetate."

To fortify its position the court had recourse to the legislative history of the involved paragraph, certain textile dictionaries, and cases previously decided by this and other federal courts. After setting forth various pertinent excerpts from the Congressional Record, the Summary of Tariff Information, textile dictionaries, and the decisions of the cited cases, the court below in its final conclusion held:

It is elementary that the master rule of construction of tariff statutes is so to interpret them as to carry out the legislative intent. It is clear to us, however, from a consideration of the record before us and the congressional history of said paragraph 1302, that although garnetted rayon is also filaments of rayon within the common meaning of that term, the Congress did not, for tariff purposes, so regard it. *United States* v. *Grumbacher*, 27 C. C. P. A. (Customs) 166, C. A. D. 80.

Appellant contends that the language of the statute is unambiguous and that reversible error was committed by the trial court in having resorted to extraneous matters to determine its meaning. The rule of this court in the construction of the provisions of the tariff act is that resort may not be had to extraneous matters to create an ambiguity in the language of a statute where none otherwise exists.

It must be observed in the case at bar, however, that the court first reached its basic conclusion without resort to the consideration of extraneous matters and that such matters were employed by it not as decisive but solely to exemplify the validity of its original conclusion. The point raised by appellant was explained and disposed of by Justice Reed of the Supreme Court to the following effect in the case of *United States et al.* v. *American Trucking Associations, Inc., et al.*, 310 U. S. 534, 542:

In the interpretation of statutes, the function of the courts is easily stated. It is to construe the language so as to give effect to the intent of Congress. There is no invariable rule for the discovery of that intention. To take a few words from their context and with them thus isolated to attempt to determine their meaning, certainly would not contribute greatly to the discovery of the purpose of the draftsmen of a statute, particularly in a law drawn to meet many needs of a major occupation.

There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook, to give expression to its wishes. Often these words are sufficient in and of themselves to determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one "plainly at variance with the policy of the legislation as a whole" this Court has followed that purpose, rather than the literal words. When aid to construction of the meaning of words, as used in the statute, is available, there certainly can be no "rule of law" which forbids its use, however clear the words may appear on "superficial examination." * * *

We find no error by the court below in taking the precaution through the recital of certain legislative history to remove any doubt with respect to the propriety of the court's decision on the points raised by appellant.

For the reasons hereinbefore stated, the judgment of the United States Customs Court is *affirmed*.

JACKSON, J., retired, recalled to participate herein.